IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **CARBON PROCESSING AND RECLAMATION, LLC, and CPR MARINE, LLC,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )        No. 09-2127-STA ) |
| **VALERO MARKETING AND SUPPLY CO. and VALERO REFINING CO. – TENNESSEE, LLC,** | ) ) ) ) |
| Defendants. | ) ) |
| v. | ) ) |
| **WILLIAM L. JONES** | ) ) |
| Third-Party Defendant. | ) |

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR
ELABORATION OF SUMMARY JUDGMENT ORDER**

---

Before the Court is Plaintiffs Carbon Processing and Reclamation, LLC, and CPR Marine, LLC (hereinafter "CPR")'s Motion for Clarification and/or Elaboration of the Court's Summary Judgment Order (D.E. # 204) filed on March 16, 2012. Defendants Valero Marketing and Supply Co. and Valero Refining Co. – Tennessee, LLC's (hereinafter "Valero") have filed a response in opposition to CPR's Motion. For the reasons set forth below, CPR's Motion is **GRANTED**.

**BACKGROUND**

As the Court has set out in its previous orders, this case presents a commercial dispute over

1

a contract for the sale of slurry, a byproduct of the petroleum refining process. CPR is engaged in the business of purchasing and selling petroleum products, including slurry and fuel oils. Valero produces petroleum products of various grades, including conventional gasoline, diesel fuel, other fuel oils, and slurry. CPR alleges that Valero breached the parties' contract for the sale of slurry and committed various torts and violations of the Tennessee Consumer Protection Act ("the TCPA").

On October 17, 2011, the Court issued a summary judgment order, concluding in part that the parties had a contract pursuant to Tenn. Code Ann. § 47-2-207(3). Specifically, the Court held that the parties had two separate term agreements for the sale of slurry. The first agreement provided for the sale of slurry free-on-board ("FOB") to CPR from Valero's Memphis refinery ("the 953 agreement"). The second contract was a delivered agreement whereby Valero promised to deliver certain quantities of slurry to CPR at facilities in New Orleans ("the 954 agreement"). The contracts came into existence by means of the parties' mutual recognition of a binding contract. The contracts consisted of the terms on which the writings exchanged by the parties agreed. For purposes of summary judgment, the Court focused its analysis on whether Valero breached the duration provisions of each contract when it cancelled the agreements in early 2009. Because CPR sought summary judgment only for the breach of the duration terms of the contracts, the Court did not construe any of the other material terms of the 953 or 954 agreements.

In its Motion for Clarification and/or Elaboration, CPR seeks an additional summary judgment ruling from the Court on other material terms of the agreements, namely, the volume of slurry to be sold under each contract and the contract price. CPR argues that it did, in fact, seek summary judgement as to the volume and price terms in its motion for partial summary judgment. CPR has cited relevant portions from its briefing at summary judgment to show that it sought

judgment as a matter of law on the existence of a contract. CPR stipulates that it does not seek to file new briefing or additional evidence in support of these claims, only to obtain an express ruling from the Court on these issues. CPR argues that such a procedure will streamline the issues raised at trial, thereby shortening the length of the trial. Therefore, CPR argues that the Court should take up the issues of whether the writings agreed on volume and price now.

Valero has filed a combined response in opposition to CPR's Motion and its own Motion to Reconsider.[1] Valero argues that questions of fact related to the issues CPR raises in its Motion for Clarification preclude summary judgment. Valero maintains that factual issues concerning price, quantity, and quality exist that make judgment as a matter of law on these contract terms improper. Valero argues that none of the 953 writings or 954 writings the parties exchanged agreed on the essential terms of product specification, price, or quantity. For example, Valero cites the allegations of the First Amended Complaint, which Valero construes to say that the parties never agreed on the material terms of the writings. Similarly, Valero contends that the deposition testimony of CPR's own witnesses established that the parties's writings never incorporated the terms of the parties' contract. Valero argues then that "[i]n the absence of an agreement on these essential terms in the writings that the parties exchanged, there can be no contract."[2] Because the resolution of these terms presents a question of fact, Valero argues that the Court should deny CPR's Motion and permit a jury to resolve the terms of the parties' agreements.

---

[1] The Court has addressed Valero's arguments for reconsideration in a separate order, which is being entered contemporaneously with this order. Accordingly, the Court addresses only Valero's arguments in opposition to CPR's Motion for Clarification here.

[2] Defs.' Mem. in Support Mot. Reconsider & in Opp'n to Pls.' Mot. to Clarif. 6 (D.E. # 207).

## ANALYSIS

Although the Federal Rules of Civil Procedure do not specifically recognize motions for clarification or elaboration, Local Rule of Court 7.3 provides for motions for revision of interlocutory orders. Under the Local Rules, "any party may move pursuant to Fed. R. Civ. P. 54(b), for the revision of any interlocutory order" before the entry of judgment.[3] Local Rule 7.3(b) enumerates the only grounds for revision and requires the moving party to specifically show

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.[4]

Like Rule 59(e) motions, a motion to reconsider should not be based on legal arguments or evidence that the movant simply failed to raise in the earlier motion.[5] Local Rule 7.3(c) prohibits the repetition of any argument the party moving for revision made during the initial consideration of the issues.[6] "Any party or counsel who violates this restriction shall be subject to appropriate sanctions,

---

[3] L.R. 7.3(a); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").

[4] L.R. 7.3(b).

[5] *See Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2617 n.5 (2008) (citing 11 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2810.1 pp. 127-128 (2d ed. 1995)); *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007).

[6] L.R. 7.3(c); *see also Helton v. ACS Grp.*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997) ("[W]here the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal.") (quotation omitted).

including, but not limited to, striking the filing."[7]

The Court finds that CPR has properly raised the issues presented and stated the grounds for clarification with sufficient particularity. As such, CPR has shown good cause for the relief sought. CPR has cited portions of its summary judgment briefing demonstrating that it did previously seek judgment as a matter of law as to the existence of a binding contract, including the volume and price terms of the agreement (though not the breach of these terms).[8] For example, CPR's motion for partial summary judgment concluded by stating

> CPR is entitled to summary judgment regarding (a) the existence of a binding, enforceable agreement between CPR and Valero established by a course of performance and confirmed in certain writings as to the material terms of product, location, price, quantity, and duration, and (b) Valero's breach of that agreement by refusing to honor its material terms through March 1, 2010.[9]

At summary judgment CPR adduced evidence of the parties' course of conduct, including repeated references to the existence of a binding agreement for the sale of slurry as well as a series of writings containing the terms of the agreement. The Court concluded that a contract by conduct existed under Tennessee law. The only material term the Court construed, however, was the duration of the contract, primarily because CPR sought partial summary judgment only for the breach of that term. CPR argued that Valero breached the contract by terminating the agreement in early 2009. Not surprisingly, the Court focused its analysis at summary judgment on the issue of whether an

---

[7] L.R. 7.3(c).

[8] Even though CPR's Motion does not seek clarification on whether summary judgment should be granted as to the product specification term, Valero's response brief makes several references to this term of the parties' contract. Because CPR has renewed its motion for summary judgment only for the volume and price terms, the Court declines to reach the product specification issue here.

[9] Pls.' Mot. Partial Summ. J. 27 (D.E. # 131-1).

5

enforceable agreement between the parties existed, and if so whether Valero had breached the duration term of the parties' agreement. As a result, the Court did not consider whether the parties' writings agreed on other material terms such as price or quantity.

The fact remains that CPR's memorandum can be read to seek judgment as a matter of law simply as to the existence of a binding contract, including the volume and price terms of the agreement. The Court would highlight that CPR did not seek then and does not seek now summary judgment for the breach of these material terms. Therefore, the Court holds that further elaboration of its summary judgment ruling as to these issues is appropriate.

Without restating the relevant standard of review under Rule 56(a), the Court holds that CPR is entitled to summary judgment as to the volume and price terms of the parties' agreements. As previously noted, the Court has held that both parties recognized the existence of a binding contract by virtue of their conduct.[10] Pursuant to Tenn. Code Ann. § 47-2-207(3), this conduct was sufficient to establish a contract for the sale of goods. The only question presented is what the terms of the contract were. The Tennessee UCC provides the rule of construction; the terms of the agreement between the parties are the "terms on which the writings of the parties agree" as well as the UCC's gap filling provisions.[11]

---

[10] The law and facts supporting this holding are found in the Court's summary judgment order. *See* Order Granting in Part, Denying in Part Pls.' Mot. Partial Summ. J. 24-28, Oct. 17, 2011 (D.E. # 197).

[11] Tenn. Code Ann. § 47-2-207(3). *See also United Foods, Inc. v. Hadley-Peoples Mfg. Co.*, 1994 WL 228773, at *5 (Tenn. Ct. App. May 20, 1994); *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 641 (6th Cir. 2004) (applying Mich.'s UCC 2-207(3)); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir. 1972) (applying Tenn.'s UCC 2-207(3)). Just as it did on summary judgment, Valero argues that a battle of the forms analysis will show that the parties' writings did not agree as to essential terms, and thus no contract was formed. For the reasons explained herein, the Court finds that the writings did in fact reach an agreement as to

In its previous summary judgment order, the Court identified all of the relevant writings exchanged by the parties during the course of their performance. At summary judgment, the Court found that the parties exchanged various writings containing different terms including "(1) Valero's February 26, 2008 writings; (2) CPR's April 11, 2008 revisions; (3) Valero's December 22, 2008 revisions to the 953 writing; (4) Valero's December 24, 2008 revisions to the 954 writing; and (5) CPR's December 24, 2008 combined revisions to the 953 and 954 writings."[12]  Just as it did at summary judgment, the Court will confine its analysis to these writings for purposes of CPR's Motion for Clarification and determine whether the writings agreed as to the volume and price terms of each contract. The Court will consider each material term separately.

**A. Volume**

Based on its review of the 953 and 954 writings, the Court finds that the documents evidence an agreement as to the volume and price terms. First, the Court finds that the writings agree as to the volume of slurry to be sold under each agreement. With respect to the FOB agreement, all of the parties' 953 writings agree that Valero would sell CPR "126,000 barrels per month, plus/minus 10%, buyer's option." Likewise, all of the parties' 954 writings agree that Valero would sell CPR "84,000

---

volume and price. Therefore, summary judgment on these material terms is proper.

The premise of Valero's argument appears to be that all forms exchanged by the parties must agree on the essential terms. Valero has not cited any authority for this requirement, and the plain language of UCC 2-207(3) simply requires that the writings agree, not that all iterations of the parties' writings agree. For example, the parties in this case exchanged several writings for each contract, the 953 writings and the 954 writings. The Court has held that even though the first round of 953 writings disagreed on duration, the parties' later 953 writings reached an agreement on the matter, thereby making the duration term on which they agreed a binding part of their contract by conduct. *See* Order Granting in Part, Denying in Part Pls.' Mot. Partial Summ. J. 29–30. As a result, the Court finds Valero's argument on this point to be without merit.

[12] Order Granting in Part, Denying in Part Pls.' Mot. Partial Summ. J. 29.

barrels per month, plus/minus 10%, seller's option." Therefore, pursuant to Tenn. Code Ann. § 47-2-207(3), these quantity terms became part of each respective agreement.

It is true that in edits it proposed to Valero, CPR added the phrase "not less than" to qualify the specific quantities included in the writings. For example, its April 11, 2008 revisions to the 953 writings stated the quantity term as "not less than 126,000 barrels per month. . . ."[13] In a similar fashion, CPR proposed that the 954 writings state the quantity term as "not less than 84,000 barrels per month. . . ."[14] Upon inspection none of Valero's 953 writings ever adopted or incorporated CPR's "not less than" phrase. However, the Court construes the phrase "not less than" to be surplusage because the parties did not bargain for a precise quantity but allowed an option of "plus/minus ten percent (10%)" of the specific quantity under each agreement. Other courts have arrived at similar conclusions where contracts for the sale of commodities use qualifying phrases such as "more or less" or "about" alongside other phrases which suggest a range of variable

---

[13] CPR further proposed an addendum in all of its edits to the 953 and 954 writings. CPR captioned the addendum as "Rider A," which read as follows:

> In the event Valero does not have adequate supply from its Memphis refinery to fulfill its monthly obligations to Buyer hereunder, Valero shall supply Buyer with sufficient barrels of product meeting the specifications set forth above to satisfy its obligations hereunder. Valero shall be solely responsible for any additional costs incurred in supplying such replacement barrels to Buyer.

> *See* CPR's Apr. 11, 2008 953 revisions (D.E. # 131-19)

Valero never adopted this proposed rider in its own writings, meaning that it did not become part of the parties contract under Tenn. Code Ann. § 47-2-207(3). Furthermore, the proposed rider did not actually alter the quantity terms set out in the writings but addressed Valero's responsibility to supply that quantity. Therefore, the Court concludes that Rider A does not alter the fact that the parties' 953 and 954 writings agreed on the respective quantity terms.

[14] *See* CPR's Apr. 11, 2008 954 revisions (D.E. # 131-20).

quantities.[15]  In this case, the parties contemplated that the specific quantity of 126,000 barrels under the FOB contract and 84,000 barrels under the delivered contract might vary by as much as ten percent in any given month, depending on the option holder's decision to exercise the option for up to ten percent more or less than the stated volume.  As a result, the addition of the words "not less than" did not materially alter the term as between the parties' drafts of the writings.  The Court holds then that the 953 writings agreed on a monthly sales volume of 126,000 barrels, "plus/minus 10% buyer's option" and that the 954 writings agreed on a monthly volume of 84,000 barrels, "plus/minus 10% seller's option."  Therefore, CPR's Motion is **GRANTED** as to the existence of the quantity terms.

**B. Price**

Second, the Court finds that the parties' writings agree as to the price for slurry sold under each contract.  CPR argues in its Motion for Clarification that the price terms governing both agreements were stated in CPR's April 2008 edits of the 953 and 954 writings.  According to CPR, the 953 agreement specified that the contract price was "the posted Platts price for 3% No. 6 Fuel Oil price, less either $9.00 or $7.00 per barrel depending on the season."[16]  CPR claims that "while Valero made subsequent changes to CPR's edits to the 953 and 954 documents, Valero did not

---

[15] W.R. Habeeb, *Construction and Effect of Contract for Sale of Commodity or Goods Wherein Quantity is Described as "About" or "More of Less" Than an Amount Specified*, 58 A.L.R. 377 ("Where, in a contract for the sale of goods, the quantity stated is qualified by the words 'more or less' and these words are supplemented by other stipulations or conditions giving them a defined or a broader scope or significance, it has been held or recognized in a number of cases that the contract was governed by such other stipulations or conditions.").

[16] Pls.' Mot. for Clarif. 6 (D.E. # 204-1).

9

change the price terms."[17]  In point of fact, the 953 writings exchanged between the parties used a three-day average of the published Platts price for 3% No. 6 Fuel Oil and disagreed over whether the three-day period should center around "the completion of the load" or "the commencement of loading."  For instance, Valero's original 953 writing from February 2008 specified that the price was to be the "mean" for "three days around completion of load."[18]  By contrast, CPR responded in April 2008 with a proposed revision of the price term to be calculated as the "low" price for "three days around commencement of loading."[19]  The Court finds that these two writings do not show agreement on the price term for the FOB contract.

Nevertheless, the parties did continue to recognize the existence of a contract and exchanged more 953 writings during the course of 2008.  The Court finds that the parties' December 2008 writings agreed that the price of slurry for the FOB agreement was to be determined as follows:

> Platt's U.S. Gulf Coast Waterborne average low for No. 6, 3%, effective for three days around completion of load (COL), less $7.00 per barrel.[20]

Although not all of the writings contain this price term, Valero's edits dated December 22, 2008, and CPR's edits in response dated December 24, 2008, both include the same language.  The Court holds then that the agreement on a price term in these two writings satisfies the requirements of Tenn. Code Ann. § 47-2-207(3).  Therefore, this price term became part of the FOB agreement, and CPR's Motion for Clarification is **GRANTED** as to this issue.

---

[17] *Id.* at 7.

[18] Valero's Feb. 25, 2008 953 writing (D.E. # 131-10).

[19] CPR's Apr. 11, 2008 953 revisions (D.E. # 131-19).

[20] *See* Valero's Dec. 22, 2008 953 revisions (D.E. # 131-21), and CPR's Dec. 24, 2008 revisions (D.E. # 132-9).

Likewise, the parties' 954 writings agreed to a substantially similar price term to govern the delivered contract. Just as with the 953 writings, the parties' early 954 writings did not agree on the price term for the slurry but later came to agreement in the December 2008 writings. Valero transmitted its final 954 writing on December 24, 2008, which contained the following price term:

> Platt's U.S. Gulf Coast Waterborne average low for No. 6, 3%, effective for three days around completion of load (COL), less $3.00 per barrel.[21]

Later the same day, CPR faxed to Valero its revisions to the 953 writings with a cover sheet stating "We also note that we have received today (12/24) the proposed modification to our contract 40190954. All of the [CPR's] proposed changes to contract 40190953 attached (other than rider B) apply equally to contract 40190954."[22] CPR did not submit a separate revision of the 954 writing. More importantly, CPR's revision of the 953 writing did not make any changes or revisions to the price term Valero proposed in its 954 writing earlier on December 24, 2008. Based on the fact that CPR did not object to or revise in any way the price term Valero had suggested, the Court finds that CPR agreed to the price term proposed in Valero's December 24, 2008 revision. Therefore, that price term became part of the parties' delivered contract pursuant to Tenn. Code Ann. § 47-2-207(3). As such, CPR's Motion is **GRANTED** as to this issue.

## CONCLUSION

The Court finds good cause to clarify its previous summary judgment order. Accordingly, CPR's Motion is **GRANTED** as to the existence of a binding contract, which included terms for volume and price. The Court holds that pursuant to Tenn. Code Ann. § 47-2-207(3), the parties'

---

[21] *See* Valero's Dec. 24, 2008 954 revisions (D.E. # 131-22).

[22] *See* CPR's Dec. 24, 2008 revisions (D.E. # 132-9).

FOB contract had the following volume provision: "126,000 barrels per month, plus/minus 10%, buyer's option." The FOB contract had the following price provision: "Platt's U.S. Gulf Coast Waterborne average low for No. 6, 3%, effective for three days around completion of load (COL), less $7.00 per barrel." The Court finds that the parties' 953 writings agreed on these terms, and so these provisions became part of the parties' contract by conduct.

For the same reasons, the Court holds that pursuant Tenn. Code Ann. § 47-2-207(3), the parties' delivered contract had the following volume provision: "84,000 barrels per month, plus/minus 10%, seller's option." The delivered contract has the following price provision: "Platt's U.S. Gulf Coast Waterborne average low for No. 6, 3%, effective for three days around completion of load (COL), less $3.00 per barrel." The Court finds that the parties' 954 writings agreed on these terms, and so these provision became part of the parties' contract by conduct. Therefore, CPR's Motion is **GRANTED**.

    **IT IS SO ORDERED.**

                                                  **s/ S. Thomas Anderson**
                                                  S. THOMAS ANDERSON
                                                  UNITED STATES DISTRICT JUDGE

                                                  Date: July 6, 2012.